


May 22, 2023

**<u>VIA ECF</u>**
Honorable Paul G. Gardephe,
United States District Judge
United States District Court
Southern District of New York
40 Foley Square, Room 2204
New York, New York 10007

**Re: Trion James v. Port Authority Police Department, *et al.***
**<u>Civil No. 1:22-cv-02463-PGG</u>**

Dear Judge Gardephe:

The Port Authority of New York and New Jersey, Edward Cetnar and Christopher McNerney submit this letter, the Declaration of Megan Lee dated May 22, 2023 and the exhibits attached thereto in support of their request for a pre-motion conference concerning defendants' request to move for summary judgment. Defendants respectfully submit that summary judgment is appropriate here because plaintiff Trion James cannot show that defendants violated Title VII of the Civil Rights Act of 1964 by discriminating against him when he was not promoted to Detective Sergeant or by subjecting him to a hostile work environment. Plaintiff also cannot show that the decision to transfer him from the World Trade Center (WTC) command for the good of the service was pretextual and/or retaliatory. Plaintiff's claims against Cetnar and McNerney must be dismissed, as a matter of law, inasmuch as Title VII does not provide for claims against individuals. Plaintiff's request for punitive damages must also be dismissed, as a matter of law, because punitive damages are not recoverable as against the Port Authority.

**<u>Allegations in the Amended Complaint</u>**

The First Amended Complaint dated June 15, 2022 (DE 8) sets forth four incidents that are the basis of plaintiff's claims, to wit:

- Plaintiff attended a holiday event in 2009 at which McNerney punched another officer and was not reprimanded; instead, McNerney "continues to subject James to a hostile work environment because James intervened to protect his colleague." (Am. Comp. ¶¶ 16, 19).

- Plaintiff attended a holiday event in 2019 at which a police officer made racist and threatening statements to plaintiff and another black Sergeant. Despite filing the appropriate paperwork concerning the incident, the various departments that received the complaint did not conduct a full and fair investigation and plaintiff was subjected to hostility at his workplace because he was allocated fewer resources that would allow him to perform his job. (Am. Comp. ¶¶ 21-28).

4 World Trade Center I 150 Greenwich Street, 24th Floor I New York, NY 10007 I T: 212-435-3435 I F: 212-435-3834 I mlee@panynj.gov






- Plaintiff applied for the position of Detective Sergeant in March 2020,[1] but was denied the promotion because McNerney had influence over who was promoted. (Am. Comp. ¶¶ 30, 36).

- Plaintiff was transferred from the WTC Command to the JFK Command in October 2021 after the PAPD was notified of the Equal Employment Opportunity Commission's investigation into plaintiff's complaint concerning the 2019 holiday party. (Am. Comp. ¶¶ 38, 39, 42, 46).

The Amended Complaint alleges two causes of action for violations of Title VII against all defendants. First, plaintiff claims he was subjected to an adverse employment action and hostile work environment based on his race and color. (Am. Comp. ¶¶ 50, 51). Second, plaintiff claims he was retaliated against when he was transferred to JFK. (Am. Comp. ¶¶ 56, 57).

## BASIS FOR MOTION FOR SUMMARY JUDGMENT

**First Cause of Action – Adverse Employment Action and Hostile Work Environment**

To prevail on his discrimination claim, plaintiff must establish a *prima facie* case of discrimination; the Port Authority must offer a legitimate, non-discriminatory reason for the adverse employment action; and plaintiff must then show the proffered reason is pretext. *See*, *Cortes v. MTA N.Y.C. Transit*, 802 F.3d 226, 231 (2d Cir. 2015). While the burden of establishing a *prima facie* case of discrimination is not onerous, a plaintiff must still come forth with proof that his treatment gives rise to an inference of unlawful discrimination. *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 710 (2d Cir. 1998).

**A. Detective Sergeant Promotion – Plaintiff Failed the QRM**

To be promoted to Detective Sergeant, candidates must meet initial screening requirements as set forth in the Detective Sergeant Promotional Opportunity Announcement issued on March 16, 2021. *See*, Ex. A. Candidates who meet these initial requirements are reviewed by a Promotion Review Board against Competitive Screening Criteria to determine who is eligible to participate in the Qualifications Review Meeting (QRM) process. *See*, Ex. A, p. 4. At the QRM, the candidate is interviewed by a panel comprised of a human resources representative and two police Commanding Officers to assess critical competencies for the Detective Sergeant job title through the administration of structured behavioral and situational questions. *See*, Ex. B. The candidate is asked a predetermined set of questions, the QRM panel members make notes concerning the responses, and they caucus after the interview is concluded to rate the candidate using behavioral checklists and behavioral anchored ratings scales to guide the ratings. *See*, Ex. B. Plaintiff participated in the QRM process in April 2021 and received a rating of "Needs Development." Per the Announcement, plaintiff's rating on the QRM relegated him to an overall rating of "Not Recommended". *See*, Ex. A, p. 7, Ex. E. Only candidates with an overall rating

[1] Plaintiff applied for the Detective Sergeant position in March 2021. *See*, Lee Dec., Ex. A and Ex. J, p. 117.

4 World Trade Center l 150 Greenwich Street, 24th Floor l New York, NY 10007 l T: 212-435-3435 l F: 212-435-3834 l mlee@panynj.gov






of "Highly Recommended" are placed on a list of candidates who may be considered for promotion into the Detective Sergeant job title. *See*, Ex. F.

The officers who participated in plaintiff's QRM noted that he missed a lot in answering certain questions. *See*, Ex. C and *See*, Ex. D. McPherson did not know plaintiff prior to the QRM, whereas, McSorley had met him several times and had had a positive opinion of him. *See*, Ex. C, p. 2., Ex. D, p. 2. Both men advised investigators that no one talked to them about plaintiff's QRM, and they were not pressured by anyone with respect to plaintiff's rating. *See* Ex. C, p. 2, Ex. D, p. 2. As a matter of procedure, Cetnar and McNerney were not involved in the QRM process or the creation of the recommended list. Further, Cetnar is constrained to promote only from the Promotional Recommendations list. *See*, Ex. F. No adverse action was taken here. Rather, Plaintiff failed the test.

**B. 2019 Off-Duty Holiday Party**

To the extent that plaintiff is claiming the incident at the 2019 off-duty holiday party constituted either an adverse employment action or a hostile work environment, the Port Authority promptly investigated the allegations and the Office of Diversity and Inclusion recommended that the perpetrator, Officer Zammit, be terminated. *See*, Ex. G. Officer Zammit was served with disciplinary charges on April 28, 2020. *See*, Ex. H. However, the Port Authority's efforts to terminate Officer Zammit were thwarted by the disciplinary process for police officers required by the Memorandum of Agreement between the Port Authority and the Police Benevolent Association ("MOA"). *See*, Ex. I, Article XXVIII.

Pursuant to the MOA, disciplinary charges must be submitted to a Board of Inquiry (BOI), a three-person review panel consisting of a representative of the Port Authority, a representative of the PBA, and a neutral party. *See*, Ex. I, Appendix "G" ¶ B(2) & B(2)(b). When the disciplinary charge involves major discipline (hereinafter, "major BOI"), the MOA mandates that the proceeding be informal and not transcribed (*see*, Ex. I, Appendix "G" ¶ B(2)(b)), thus there is no record of what occurred during a BOI or the Board's discussion of the charge. Furthermore, in a major BOI, a majority vote of the Board can "downgrade any such disciplinary charge to one seeking minor discipline." *See*, Ex. I, Appendix "G" ¶ B(2)(b) & July 28, 2000 Side-Agreement.

The disciplinary charges against Zammit were presented to the BOI on July 20, 2021, at which Joel Douglas served as the neutral arbitrator. The Port Authority argued that the disciplinary charge should proceed as a major discipline and the PBA pushed for a downgrade to a minor discipline. The BOI by majority vote downgraded the charge to one seeking minor discipline, a decision with which defendants did not agree, but one that is controlled by the MOA.

**C. 2009 Off-Duty Holiday Party**

"To establish a hostile work environment claim under Title VII, plaintiff must produce evidence that the complained of conduct '(1) is objectively severe or pervasive—that is, creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment






because of plaintiff's ... protected characteristic.'" *Russo v. New York Presbyterian Hosp.*, 972 F.Supp.2d 429, 446 (E.D.N.Y. 2013) (*quoting Robinson v. Harvard Prot. Servs.*, 495 Fed.Appx. 140, 141 (2d Cir. 2012)). Other than the incident at the 2019 off-duty holiday party, plaintiff came forth with no evidence of severe or pervasive conduct directed at him because of his race.

The incident at the 2009 party had nothing to do with plaintiff's race or color, or even plaintiff, himself. According to plaintiff, the 2009 incident occurred at a bar in New Jersey, where the PATH police command was having a party, at which plaintiff and McNerney were in attendance. Plaintiff did not know McNerney, but saw him slap another white police officer and later punch him. *See*, Ex. J, p. 139. Plaintiff then shoved McNerney and punched him in the face. *See*, Ex. J, p. 141. After this incident, plaintiff never worked with or spoke to McNerney, and he never discussed the incident with the other officers. *See*, Ex. J, p. 134. No hostile action was taken against plaintiff at the party and the action McNerney took against the white officer was not because of a protected characteristic.

Even assuming the incident in 2009 could form the basis for a claim under Title VII, it is barred because plaintiff failed to exhaust his administrative remedies by filing a charge of discrimination with the EEOC concerning this incident. *See*, *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 384 (2d Cir. 2015). Additionally, any claim arising from this incident is too remote in time to make it actionable under the continuing violation doctrine. *See, e.g., Bowen-Hooks v. City of N.Y.*, 13 F. Supp. 3d 179, 206 (E.D.N.Y. 2014) (finding "very similar" conduct by same harasser to be discrete discriminatory acts and declining to apply continuing violation theory, noting that "similarity alone is insufficient to render continuous what is essentially two separate instances of alleged harassment separated by more than three years"). Plaintiff testified that he had no encounters with McNerney since the 2009 incident thereby defeating a claim based on continuous treatment by McNerney sufficient to establish a hostile work environment.

Consequently, plaintiff's hostile work environment claim fails because the alleged incidents are too "episodic" to support his claim. *Raspardo v. Carlone*, 770 F.3d 97, 114 (2d Cir. 2014) ("The incidents complained of 'must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive.'" (*quoting Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002)).

***Count II – Retaliation based on transfer to JFK***

To prevail on his retaliation claim, plaintiff must show that he engaged in a protected activity, defendants were aware of the protected activity, and the protected activity was the cause of an adverse employment action. *Kinard v. Crew*, 2021 WL 5023339, at 1 (2d Cir. 2021). If plaintiff does so, the burden of production shifts to the Port Authority to demonstrate that a legitimate, nondiscriminatory reason existed for its action. *Raniola v. Bratton*, 243 F.3d 610, 625 (2d Cir. 2001). And if the Port Authority carries that burden, then the burden shifts back to plaintiff, who must establish "that the employer's action was, in fact, motivated by discriminatory retaliation." *Id.* Title VII retaliation claims require that plaintiff "establish that his or her protected activity was a but-for cause of the alleged action by the employer," and not merely a "substantial" or "motivating" factor, which is sufficient for a discrimination claim. *Univ. of Tex. Sw. Med. Ctr. v.*






*Nassar*, 570 U.S. 338, 362, 348 (2013). Plaintiff cannot show any adverse employment action taken by defendants in retaliation for plaintiff engaging in a protected activity.

Plaintiff claims he was transferred to JFK in retaliation for filing a claim with the EEOC concerning his treatment at a holiday party. Plaintiff incorrectly asserts he was transferred the same day the Port Authority was informed by the EEOC that it was investigating his complaint. Plaintiff was transferred from the WTC Command to the JFK Command on October 26, 2021 following an off-duty incident involving Durst Security, the entity operating One World Trade Center on October 21, 2021. *See*, Ex. K. Plaintiff previously advised the Labor Relations unit that he had an appointment with the EEOC concerning the Zammit incident on May 3, 2021, and on September 15, 2021, the EEOC advised the Port Authority that plaintiff had filed charges. *See*, Exs. L and M. The actions taken by plaintiff with respect to his treatment at the party and filing EEOC charges had nothing to do with his transfer more than a month after the Port Authority was formally notified of his EEOC charges.

On October 21, 2021, plaintiff attempted to access the restaurant on the top of One World Trade Center even though he was an hour late for his reservation and the security checkpoint to access the restaurant was closed. *See*, Ex. N, pp. 7-9 and Ex. O. Plaintiff had a uniformed officer escort him to the building because he was off duty, but he wanted them to know he was the police. *See*, Ex. J, p. 164, Ex. R, p. 37. He began arguing with guest services personnel and demanded to be let up displaying his Port Authority Police Identification Card and Sergeant Shield. *See*, Ex. P, pp. 15-16, Ex. Q. When he became loud and argumentative with the staff, they asked the police officer to remove him from the building. *See*, Ex. R, p. 46. She called her supervisor to report the incident and ultimately left the building with plaintiff. *See*, Ex. S, p. 2. Durst security also reported the incident to the Port Authority, as a result of which the Police Integrity Unit undertook an investigation during the course of which they provided updates to the Superintendent of Police *(i.e.,* Cetnar). *See*, Ex. T. On October 25, 2021, Cetnar chose to exercise his right under the SBA MOU to transfer plaintiff to JFK for the good of the service given what transpired at One WTC as reported to him by the Police Integrity Unit. *See*, Ex. U.

The SBA filed a grievance challenging plaintiff's transfer, and the Port Authority filed a legal action seeking to stay the arbitration. The state court stayed the arbitration and found that plaintiff's transfer for the good of the service was expressly authorized by the MOA and was not pretextual. *See*, Ex. V.

***Claims against Cetnar and McNerney***

Plaintiff's Title VII claims asserted against Cetnar and McNerney are not viable because "individuals are not subject to liability under Title VII." *Wrighten v. Glowski*, 232 F.3d 119, 120 (2d Cir. 2000) (per curiam); *see, e.g., Tomka v. Seiler Corp.*, 66 F.3d 1295, 1313 (2d Cir.1995) ("individual defendants with supervisory control over a plaintiff may not be held personally liable under Title VII"), abrogated on other grounds by *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998); *Lore v. City of Syracuse*, 670 F.3d 127, 169 (2d Cir. 2012).






***Punitive Damages Are Not Recoverable Against the Port Authority***

Although the Second Circuit has not addressed the question, other courts in this district have applied to the Port Authority the Supreme Court's reasoning in *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 261 (1981), that municipalities should not be subject to punitive damages. *See, Holden v. Port Authority of New York and New Jersey*, 521 F.Supp.3d 415, 437 (S.D.N.Y., 2021), *citing, Vernon v. Port Auth. of N.Y. & N.J.*, 154 F. Supp. 2d 844, 860 (S.D.N.Y. 2001) (collecting cases).

***Conclusion***

For all the foregoing reasons, defendants request that they be permitted to move for summary judgment.

Respectfully requested,

By: /s/*Megan Lee*
Megan Lee, Esq.

cc: John G. Balestriere, Esq. (*via ECF*)

4 World Trade Center I 150 Greenwich Street, 24th Floor I New York, NY 10007 I T: 212-435-3435 I F: 212-435-3834 I mlee@panynj.gov