*Trion James v. Port Authority Police Department, Port Authority of New York and New Jersey,*
*Edward Cetnar (in his official capacity), Christopher McNerney (in his official capacity), and*
*Does 1-5*
*Civil No.: 1:22-cv-02463-PGG*

# EXHIBIT C

CONFIDENTIAL

**THE PORT AUTHORITY OF NEW YORK & NEW JERSEY**
OFFICE OF INSPECTOR GENERAL
Office of Investigations



## REPORT OF INVESTIGATION

| CASE NO: C-21-0021 | PREPARED BY: Inna Spector, Investigative Counsel | DATE: 11/10/21 |
|---|---|---|

| TYPE OF ACTIVITY: Interview of Brian McPherson | DATE OF ACTIVITY: 11/9/21 |
|---|---|

SUBJECT: Trion James Allegations

On November 9, 2021, the Port Authority of New York & New Jersey ("PA"), Office of Inspector General ("OIG") Investigative Counsel Inna Spector and Phillip Leahy interviewed Deputy Police Inspector Brian McPherson ("McPherson"). The interview took place at the OIG's office located at 5 Marine View Plaza, Hoboken, NJ 07030, Suite 502. McPherson acknowledged that this interview was voluntary, and he was informed that he was a witness in this investigation.

McPherson explained that he was asked to participate in and was selected by Headquarters ("HQ") to be on a panel to conduct Quality Review Meetings ("QRMs") for candidates that applied for the Detective ("Det.") Sergeant ("Sgt.") promotion in the spring of 2021. Police Lieutenant Michelle Serrano was the one coordinating the process from HQ; the QRMs in 2021 were done via MS Teams. The panel, which consists of three people, two Commanding Officers and one representative from the PA's Human Resources Department ("HRD"), is selected randomly to conduct the QRMs and rate the candidates' performance based on a standard scoring system. The panelists sign confidentiality forms indicating that they will not share any information regarding the QRMs. They are also provided with "Rating Forms" to use for notes during the QRM; there is a one-page form for each of the six questions asked during the QRM. There is also a list of questions that the panelists receive shortly prior to the QRMs. The panel does not know who the candidates they will be interviewing are until the day of the QRMs, shortly prior to the interviews. Brian Miller ("Miller") from HRD asked the panelists a few minutes prior to the interviews if any of them had a potential conflict or reservations with respect to any of the candidates on their lists to be interviewed or if interviewing the candidate would present an issue due to working closely with them. In that case, the candidate would be switched to a different panel. The interviewers have no role in formulating the questions for the QRM; the panels usually do anywhere from three to five interviews per day; on two different days. Panels also switch composition on the second day.

After each QMR is completed and the raters note important points made by candidates during the interview on the Rating Forms they are provided, the HRD representative on the panel pulls up (on computer screen) the comprehensive multi-page rating form that contains rating instructions, questions, rating summaries, and evaluation checklists for each question. This form is completed by the HRD representative after detailed discussion and consensus among the raters; all the raters agree on what boxes are to be checked for each question, based on their notes. If at least one person took a note about something a candidate said that box is checked. If none of the raters noted the answer, the box is not checked. The final scores are based on the information provided by candidates during the QRM. This process is objective and

APPROVED: _B.Q.G_   DATE: **11/10/21**
(Angels)

This report is the property of the Office of Inspector General. It contains confidential law enforcement information, and is For Official Use Only. This information may not be copied or disseminated without the written permission of the OIG. Any unauthorized or unofficial use or dissemination of this information will be penalized.

OIG-300-02/09

PA000991

**REPORT OF INVESTIGATION**
SUBJECT:C-21-0021

independent of any outside influence. McPherson stated that he did not have any directions or influence from anyone on how to rate candidates.

With respect to QMR for Sgt. Trion James ("James"), McPherson recalled the interview and after reviewing his notes on the Rating Forms and the scores on the final rating form, he stated that James scored lower than some other candidates for this promotion. McPherson met James once at the PA Technical Center during an event prior to QRMs, but he did not know him and never worked with him. He went over all the questions on the QRM and explained in detail why James received the scores he received. He again reiterated that nobody talked to him about James' QRM, and he was not pressured by anyone with respect to James' rating.

With respect to Question 1, which asks about key responsibilities of the Det. Sgt. position, McPherson explained that although James had good military and tactical experience, compared to other candidates it did not translate into the necessary experience for supervising detectives; the panel was looking for more information from James on the Det. Sgt.'s responsibilities and he missed a lot. Some of the relevant items that James did not provide in his QMR were identifying and securing PA facilities, reviewing cases, managing VIP events, and contacts with prosecutors and communications with law enforcement agencies. James received a rating of "3" on Question 1.

For Question 2, James received a rating of "4". He gave more examples of leadership skills and did well on the second part of the question, which asked about demonstrated leadership as a supervisor.

James was rated a "2" on Question 3, which presented a hypothetical situation involving a theft of a handbag and asked what steps a Det. was expected to take. McPherson stated that James' answer was very brief and that McPherson "didn't have enough to write." James did not provide much detail or basic investigative principles that Det. Sgt. should know. In McPherson's opinion, a score this low on this type of question indicated a possible lack of preparation for the QRM. McPherson believes there are various study guides available to candidates to help prepare for the interviews. He also said that James could have just spoken to current Det. Sgts. to ask them about their daily duties and responsibilities to get a better understanding of the job.

On Question 4, which askes about steps in a missing person case, James received a rating of "2" as well. James again failed to mention basic principles such as Amber Alert, Silver Alert, or BOLO. He missed a lot of check boxes – he did not discuss checking area hospitals, taking witness statements, or asking a basic question if the person has been found. His answer missed key parts of the question and indicated lack of basic investigative knowledge.

James did well on Question 5, by receiving a rating of "5." The question asked about actions in apprehending a wanted subject. James covered important areas, such as contacting CPD, getting pedigree information and description, and contacting a tour commander.

On Question 6, which had a case scenario of an assault on a homeless person, James received a rating of "3." He again missed certain important key points, such as camera feed checks, BOLO, canvassing the area or doing a photo array, as well as contacting a prosecutor and vouchering evidence.

This report is the property of the Office of Inspector General. It contains confidential law enforcement information, and is For Official Use Only. This information may not be copied or disseminated without the written permission of the OIG. Any unauthorized or unofficial use or dissemination of this information will be penalized.

OIG-300-02/09

PA000992

**REPORT OF INVESTIGATION**
SUBJECT:C-21-0021

Overall, James' performance was low compared to other candidates McPherson interviewed. He stressed that a score of "2" on basic questions was very low and showed that he was not prepared and did not understand the responsibilities of the job. After the discussion and rating of candidates, the rating forms were given to Miller or another HRD person. The QRM panels do not take part in determined which list, if any, candidates are placed on ("Not Recommended," "Recommended," or "Highly Recommended"). McPherson is not aware what standards or criteria HRD uses for list placements. He is only there for the QMR panel as a separate part in the selection process. McPherson has not had any contact with James since the QRMs. He again stressed that each person is measured by his/her own abilities during the QRMs.

This report is the property of the Office of Inspector General. It contains confidential law enforcement information, and is For Official Use Only. This information may not be copied or disseminated without the written permission of the OIG. Any unauthorized or unofficial use or dissemination of this information will be penalized.

OIG-300-02/09

PA000993