*Trion James v. Port Authority Police Department, Port Authority of New York and New Jersey, Edward Cetnar (in his official capacity), Christopher McNerney (in his official capacity), and Does 1-5*
*Civil No.: 1:22-cv-02463-PGG*

# EXHIBIT D

**THE PORT AUTHORITY OF NEW YORK & NEW JERSEY**
OFFICE OF INSPECTOR GENERAL
Office of Investigations



## REPORT OF INVESTIGATION

| CASE NO: C-21-0021 | PREPARED BY: Inna Spector, Investigative Counsel | DATE: 12/15/21 |
|---|---|---|
| TYPE OF ACTIVITY: Interview of James McSorley | | DATE OF ACTIVITY: 12/9/21 |

SUBJECT: Trion James WB Allegations

On December 9, 2021, the Port Authority of New York & New Jersey ("PA"), Office of Inspector General ("OIG") Investigative Counsel Inna Spector and Phillip Leahy interviewed a retired PA Deputy Police Chief James McSorley ("McSorley"). The interview took place at the Goethals Bridge Command building in Staten Island, New York. McSorley acknowledged that this interview was voluntary, and he was informed that he was a witness in this investigation. He provided the following information.

McSorley has a master's degree in Human Resources Management. He retired from the New Jersey State Police in 2007. He started at PAPD as a civilian and was then appointed as a Captain in PAPD in June 2009. He was assigned to the PAPD Academy from September 2010 until retiring on August 30, 2021. Having worked at the Academy, he is familiar with many Members of the Force, including Trion James ("James"). McSorley was randomly selected to be on a panel to conduct Quality Review Meetings ("QRMs") for candidates that applied for the Detective ("Det.") Sergeant ("Sgt.") promotion in the spring of 2021; the QRMs in 2021 were done virtually. The panel, which consists of three people, two Commanding Officers and one representative from the PA's Human Resources Department ("HRD"), is selected randomly to conduct the QRMs and rate the candidates' performance based on a standard scoring system. The panelists are also provided with "Rating Forms" to use for notes during the QRM; there is a one-page form for each of the six questions asked during the QRM. There is also a list of questions that the panelists receive shortly prior to the QRMs. The panel does not know who the candidates they will be interviewing are until the day of the QRMs, usually minutes prior to the interviews. Brian Miller ("Miller") from HRD asked the panelists a few minutes prior to the interviews if any of them had a potential conflict or reservations with respect to any of the candidates on their lists to be interviewed or have worked in the same command with them. In such a case, the candidates would be replaced. Each panel usually does interviews two or three times per week. McSorley estimated that he probably interviewed approximately 25 to 30 candidates.

After each QRM is completed and the raters note important points made by candidates during the interview on the Rating Forms they are provided, the HRD representative on the panel pulls up (on a computer screen) the comprehensive multi-page rating form that contains rating instructions, questions, rating summaries, and evaluation checklists for each question. This form is completed by the HRD representative after detailed discussion and consensus among the raters; all the raters agree on what boxes are to be checked for each question, based on their notes. If at least one person took a note about something a candidate said that box is checked. If none of the raters noted the answer, the box is not checked. The final scores are based on the information provided by candidates during the QRM. This process is

APPROVED: _(initials)_   DATE: 12/22/21

This report is the property of the Office of Inspector General. It contains confidential law enforcement information, and is For Official Use Only. This information may not be copied or disseminated without the written permission of the OIG. Any unauthorized or unofficial use or dissemination of this information will be penalized.

OIG-300-02/09

PA000994

**REPORT OF INVESTIGATION**
SUBJECT: Trion James WB Allegations

objective and independent of any outside influence. McSorley stated that no one attempted to influence his scoring of the candidates. McSorley was not aware of anyone attempting to influence any of the other panel members regarding the interview process. McSorley was not aware of any report(s) of misconduct made by James; if McSorley was aware of reports made by a candidate, this fact would not influence the score received by the candidate in the QRM.

With respect to the QRM for James, McSorley recalled the interview and after reviewing his notes on the Rating Forms and the scores on the final rating form, he stated that James scored lower than some other candidates for this promotion. McSorley mentioned that he met James several times in the past when McSorley was the Commanding Officer in the PAPD Academy, but he never worked with James. McSorley stated that James was always polite, and McSorley had an overall positive opinion of James as a result of their interactions. McSorley went over all the questions on James' QRM and explained in detail why James received the scores he received. He again reiterated that nobody talked to him about James' QRM, and he was not pressured by anyone with respect to James' rating.

With respect to Question 1, which asks about key responsibilities of the Det. Sgt. position, McSorley explained that he only wrote six items that James responded with to part one of the question. James mentioned that he served in the Marine Corps and was in Albania and Congo; that he was an immigrant; and that he was a weapons and tactical instructor. McSorley noted that James did better on part of the questions, but that his answers were mostly based on his experience in the Marine Corps, not the PAPD. McSorley explained that James did not have extensive experience in arrests and court systems, which was desirable for this promotion. James received a rating of "3" on Question 1.

For Question 2, James received a rating of "4," which McSorley said was a "stretch." He said there were a lot of boxes not checked off for this question because James did not mention some basic things he should have known.

James was rated a "2" on Question 3, which presented a hypothetical situation involving a theft of a handbag and asked what steps a Det. was expected to take. McSorley stated that score was "overly generous." With James having previous experience working at the airport, he should have had basic understanding how to handle theft of a handbag situation. James only had six out of 19 boxes checked which, in McSorley's opinion, was analogous to failing a test. The panel also indicated hat James had "limited understanding" of the situation.

On Question 4, which asks about steps in a missing person case, James received a rating of "2" as well. James again failed to mention basic items. McSorley mentioned that James had previously worked at the PA Bus Terminal and situations like that happen on a regular basis; James missed some "big items," like last known location, electronic devices, home address, etc. He only got 12 out of approximately 30 boxes checked. In comparison to other candidates, James demonstrated a lack of understanding; it did not appear that he was ready for this position.

James did well on Question 5, by receiving a rating of "5." The question asked about actions in apprehending a wanted subject. James covered all important areas; the panel gave him "outstanding."

This report is the property of the Office of Inspector General. It contains confidential law enforcement information, and is For Official Use Only. This information may not be copied or disseminated without the written permission of the OIG. Any unauthorized or unofficial use or dissemination of this information will be penalized.

OIG-300-02/09

**REPORT OF INVESTIGATION**
SUBJECT: Trion James WB Allegations

On Question 6, which had a case scenario of an assault on a homeless person, James received a rating of "3." He again missed blatant things that would have helped his score.

Overall, James' performance was low compared to other candidates McSorley interviewed. He stressed that a score of "2" on basic questions was very low and showed that he was not prepared and did not appear to have a good understanding of the responsibilities of the job. After the discussion and rating of candidates, the rating forms were given to HRD. The QRM panels do not take part in determining which list, if any, candidates are placed on ("Not Recommended," "Recommended," or "Highly Recommended"). McSorley is not aware what standards or criteria HRD uses for list placements. He is only there for the QRM panel as a separate part in the selection process.

This report is the property of the Office of Inspector General. It contains confidential law enforcement information, and is For Official Use Only. This information may not be copied or disseminated without the written permission of the OIG. Any unauthorized or unofficial use or dissemination of this information will be penalized.